# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

JEFFERSON J. KATIMS, M.D. (a citizen of
Maryland residing in Baltimore County),
6637 Charlesway
Ruxton, Maryland 21204, and

NEUROTRON, INC. (a Maryland corporation with
its registered office located in Baltimore County),
6637 Charlesway
Ruxton, Maryland 21204,

                                Plaintiffs,

v.

MILLEN, WHITE, ZELANO & BRANIGAN, P.C.,
(a Virginia professional corporation),
2200 Clarendon Boulevard, Suite 1400
Arlington, Virginia 22201,

                                Defendant.

Civil Action No. _____

Jury Demand

## COMPLAINT

Plaintiffs Jefferson J. Katims, M.D. and Neurotron, Inc., state and allege their Complaint against

Defendant Millen, White, Zelano & Branigan, P.C. for professional malpractice, for breach of contract,

and for equitable relief based on quasi-contract as follows:

## I.     THE PARTIES

### Plaintiff Jefferson J. Katims, M.D.

1.     Plaintiff Jefferson J. Katims, M.D. ("**Dr. Katims**") is a citizen of Maryland residing at

6637 Charlesway, Ruxton, Maryland 21204.  Dr. Katims is the inventor and owner of U.S. Patent

No. 5,806,522.

**Plaintiff Neurotron, Inc.**

2.      Plaintiff Neurotron, Inc. ("**Neurotron**") is a Maryland corporation having its registered office located at 6637 Charlesway, Ruxton, Maryland 21204.  Neurotron distributes products incorporating the technology of U.S. Patent No. 5,806,522 under a license from Dr. Katims.

**Defendant MWZB**

3.      Defendant Millen, White, Zelano & Branigan, P.C., is a Virginia professional corporation having its principal place of business located at 2200 Clarendon Boulevard, Suite 1400, Arlington, Virginia 22201.

## II.    NATURE OF THE ACTION

4.      This is a civil action alleging one count of professional malpractice, one count of breach of contract, and one count seeking equitable relief based on quasi-contract.  Plaintiffs seek compensatory and punitive damages, as well as equitable relief.

## III.   JURISDICTION AND VENUE

**Subject-Matter Jurisdiction**

5.      This Court has diversity jurisdiction in this action under 28 U.S.C. § 1332(a)(1), because the action is between citizens of different states and the amount in controversy is greater than $75,000. As stated above, Dr. Katims is a citizen of Maryland, Neurotron, Inc. is a Maryland corporation, and Defendant is a Virginia professional corporation.

**Personal Jurisdiction**

6.      Defendant is subject to the personal jurisdiction of this Court under Federal Rule of Civil Procedure 4(k)(1)(A), which provides for the exercise of personal jurisdiction over a person "who is

-2-

subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Under applicable law:

      a.      A court sitting in Maryland may exercise personal jurisdiction over a person who, directly or by an agent, "[t]ransacts any business or performs any character of work or service in the State."  Md. Code § 6-103(b)(1).  As alleged herein, Defendant transacted business in Maryland in connection with, by way of example and not limitation, its legal representation of Dr. Katims in connection with U.S. Patent No. 5,806,522.

      b.      A court sitting in Maryland may exercise personal jurisdiction over a person who, directly or by an agent, "[c]auses tortious injury in the State . . . by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."  Md. Code § 6-103(b)(4).  As alleged herein, Defendant caused tortious injury to Plaintiffs by breaching a duty of care in connection with, among other things, Defendant's representation of Dr. Katims before the U.S. Patent and Trademark Office in connection with U.S. Patent No. 5,806,522.  At all times relevant to this Complaint, Defendant regularly did and solicited business in Maryland, engaged in other persistent courses of conduct in Maryland, and derived substantial revenue from providing legal services to clients in Maryland.  By way of example, and not limitation, Defendant has attorney-client relationships with clients in

Maryland and has represented Dr. Katims on various patent prosecution matters other than the '522 Patent, as well as various other Maryland clients on various other patent prosecution matters. Defendant's Maryland patent clients other than Dr. Katims include, without limitation, the University of Maryland and the Washington Suburban Sanitary Commission.

c.    Defendant's contacts with Maryland are of sufficient scope to justify the exercise of personal jurisdiction in this case. Among other things, Defendant transacts business in Maryland and derives substantial revenue from services consumed in the State: (i) Defendant purposefully availed itself of the privileges of conducting activities in Maryland and thus invoked the benefits and protections of Maryland's laws; (ii) Defendant expressly aimed its conduct at Maryland; (iii) Defendant created continuing obligations with residents of Maryland; and (iv) Defendant's Maryland-based and Maryland-aimed activities are the basis of Plaintiffs' claims. Given the extent of Defendant's Maryland-based and Maryland-aimed activities, and the substantial connection between such activities and Plaintiffs' claims against Defendant, this Court's exercise of personal jurisdiction over Defendant is constitutionally reasonable and consistent with traditional notions of fair play and substantial justice.

## Venue

7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(a)(2), which provides, in relevant part, that this action may be brought in "a judicial district in which a substantial

-4-

part of the events or omissions giving rise to the claim occurred."

8.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(a)(3), because Defendant is a corporation which is subject to personal jurisdiction in this Judicial District at the time this civil action is commenced.

## IV.    BACKGROUND FACTS

9.      In or about January 1997, following the retirement of Defendant's predecessor counsel, Defendant and its attorneys took over the representation of Dr. Katims before the U.S. Patent and Trademark Office ("**USPTO**") in connection with U.S. Patent Application No. 08/515,302 (the "**Patent Application**"), which had been filed on or about August 15, 1995 by predecessor counsel.

10.     On or about February 3, 1997, Defendant filed with the USPTO, in connection with the Patent Application, a Revocation of Power of Attorney and Appointment of New Attorneys which had been prepared by Defendant for Dr. Katims' signature and executed by Dr. Katims.  The Revocation of Power of Attorney and Appointment of New Attorneys identified Defendant and certain of its attorneys as attorneys of record for Dr. Katims in connection with the prosecution of the Patent Application.

11.     As of September 15, 1998, upon completion of a period of examination by the USPTO and the payment of issue fees, U.S. Patent No. 5,806,522 (the "**'522 Patent**"), based on U.S. Patent Application No. 08/515,302, issued to Dr. Katims, with Defendant named on the face of the '522 Patent as attorney of record.

12.     At all times relevant to this Complaint (and through the date of the filing of this Complaint), Defendant and its attorneys have been entered in USPTO records as the attorneys of record for the '522 Patent.  As a result, USPTO correspondence relating to the '522 Patent has been directed to

Defendant.

13.    Throughout the period from prior to 2001 until 2009, Defendant represented Dr. Katims on the '522 Patent and various other patent prosecution matters and maintained its status as attorney of record for Dr. Katims before the USPTO on the '522 Patent and various other patent prosecution matters.

14.    Defendant invoiced Dr. Katims for legal fees in connection with the '522 Patent and various other patent prosecution matters, and the invoices were paid.

15.    When a patent is issued, maintenance fees must be paid to the USPTO at specified intervals in order to keep the patent in force.  *See* 35 U.S.C. § 41(b)-(c).

16.    On or about October 7, 1998, Defendant transmitted the '522 Patent to Dr. Katims with a cover letter that stated, among other things:  "[p]lease note that it will be necessary to pay maintenance fees periodically to maintain the patent in force for the full term" and "[w]e will remind you of these fees well in advance of the dates they are due."

17.    On or about December 12, 2001, Defendant notified Dr. Katims that a maintenance fee in the amount of $682 on the '522 Patent was due to be paid in 2002.

18.    Dr. Katims elected to pay the 2002 maintenance fee himself rather than pay through Defendant.

19.    Dr. Katims paid the 2002 maintenance fee on the '522 Patent by credit card on or about December 27, 2001.

20.    On information and belief, at some point prior to March 15, 2006, the USPTO mailed Defendant a notification that a maintenance fee on the '522 Patent was due March 15, 2006 with a six-month grace period ending September 15, 2006.  Defendant did not forward that notification to Dr. Katims or Neurotron.

21.    The maintenance fee on the '522 Patent was not paid by September 15, 2006; as a result, the '522 Patent expired for non-payment of that maintenance fee.  *See* 35 U.S.C. § 41(b).

22.    On information and belief, therefore, prior to March 15, 2006, Defendant, and/or an agent or other person acting on behalf of Defendant, opened a communication by mail from the USPTO stating that the '522 Patent would expire if maintenance fees were not paid by September 15, 2006.  Defendant, and/or such agent or other person acting on behalf of Defendant, knew or reasonably should have known that substantial damage was likely to result from the expiration of the '522 Patent; however, such person recklessly elected not to forward the communication to Dr. Katims or to another person who would forward the communication to Dr. Katims.

23.    USPTO online records reflect that, on or about October 19, 2006, the USPTO mailed Defendant a notification that the '522 Patent had expired for failure to pay the maintenance fee. Defendant did not forward that notice to Dr. Katims or Neurotron, nor did Defendant otherwise notify Dr. Katims or Neurotron that the '522 Patent had expired.

24.    During the 24-month period between September 15, 2006 and September 15, 2008, the USPTO would have accepted the 2006 maintenance fee for the '522 Patent upon a showing that the delay in payment of the 2006 maintenance fees was *unintentional*.  After a patent has been expired for more than 24 months for non-payment of a maintenance fee, however, the patent can be reinstated only

upon a showing that the delay in paying the maintenance fee was *unavoidable* as that term is construed

by the USPTO.  *See* 35 U.S.C. § 41(c)(1).

25.     On information and belief, therefore, in or about October 2006, Defendant, and/or an

agent or other person acting on behalf of Defendant, opened a communication by mail from the USPTO

stating that the '522 Patent had expired because the maintenance fee had not been paid by September 15,

2006.  Defendant, and/or such agent or other person acting on behalf of Defendant, knew or reasonably

should have known that substantial damage was likely to result from failure to deal promptly with the

expiration of the '522 Patent; however, such person recklessly elected not to forward the communication

to Dr. Katims or to another person who would forward the communication to Dr. Katims.

26.     In or about April 2009, Dr. Katims learned that the '522 Patent had expired in 2006 for

non-payment of the 2006 maintenance fee.

27.     Dr. Katims promptly contacted Defendant about the '522 Patent's expired status.

Defendant subsequently informed Dr. Katims that it had retained a law firm specializing in reinstating

patents that had been expired for more than 24 months.

28.     Defendant did not discuss with Dr. Katims the possibility that a conflict of interest might

arise between Defendant and Dr. Katims in connection with representation of Dr. Katims by lawyers

retained by Defendant to review the possibility of reinstating the '522 Patent.  Nor did Defendant request

a waiver of such a conflict of interest from Dr. Katims.

29.     On information and belief, one step taken by Defendant and/or the law firm retained by

Defendant to review the possibility of reinstating the '522 Patent was to make a Freedom of Information

Act request to the USPTO.

-8-

30.    On or about July 24, 2009, Defendant informed Dr. Katims by letter that "[w]e have been informed by outside counsel that there is very little chance for a petition to succeed in reviving your patent based on the information they have in hand."  On information and belief, however, the law firm retained by Defendant to review the possibility of reinstating the '522 Patent has continued to work on the preparation of a petition to reinstate.

31.    The '522 Patent has not, as of the time of this complaint, been reinstated.

32.    On or about September 11, 2009, Plaintiffs and Defendant determined that they were unable to reach mutually acceptable terms for an agreement to toll the statute of limitations in this matter.

33.    Neurotron makes and sells products incorporating the technology of the '522 Patent. Such products are distributed in a competitive market in which Neurotron used to enjoy a competitive advantage as a result of the '522 Patent.

## V.    COUNT ONE: PROFESSIONAL MALPRACTICE

34.    Each and every allegation of Paragraphs 1-33 is incorporated by reference as if fully restated herein.

35.    Defendant had a duty to notify Dr. Katims of the need to pay the 2006 maintenance fee on the '522 Patent well in advance of the due date, as alleged herein above.

36.    Defendant did not notify Dr. Katims in 2005 or 2006 of the need to pay the 2006 maintenance fee on the '522 Patent.

37.     On information and belief, at some point prior to March 15, 2006, Defendant received from the USPTO a notification that a maintenance fee for the '522 Patent was required to be paid no later than September 15, 2006 to avoid expiration of the '522 Patent.

38.     Defendant had a duty to forward to Dr. Katims the USPTO notification of the 2006 maintenance fee coming due, alleged in the preceding paragraph.

39.     Defendant did not forward to Dr. Katims the USPTO notification of the 2006 maintenance fee coming due, alleged in the preceding paragraphs.

40.     On information and belief, in or about October 2006, Defendant received from the USPTO a notification that the '522 Patent had expired for failure to pay the 2006 maintenance fee.

41.     Defendant had a duty to forward to Dr. Katims the USPTO notification of patent expiration, alleged in the preceding paragraph.

42.     Defendant did not forward to Dr. Katims the USPTO notification of patent expiration, alleged in the preceding paragraphs.

43.     The '522 Patent expired because the 2006 maintenance fee was not paid.

44.     The '522 Patent could not be reinstated through a petition showing that the delay in paying the 2006 maintenance fee was *unintentional*, because Dr. Katims did not learn of the expiration of the '522 Patent until after the 24-month period for such a petition had passed.

45.     Dr. Katims and his licensee, Neurotron, were harmed as a result of the expiration of the '522 Patent.

46.     The harm done to Dr. Katims and Neurotron as a result of the expiration of the '522 Patent was proximately caused by Defendant's breach of its duty to notify Dr. Katims of the need to

pay the 2006 maintenance fee on the '522 Patent, Defendant's breach of its duty to forward the USPTO notification that 2006 maintenance fees were coming due, and Defendant's breach of its duty to forward the USPTO notification that the '522 Patent had expired for failure to pay the 2006 maintenance fee.

47.    Defendant's conduct was reckless, willful, and wanton and meets the standard for punitive damages.

## VI.    COUNT TWO: BREACH OF CONTRACT

48.    Each and every allegation of Paragraphs 1-33 is incorporated by reference as if fully restated herein.

49.    As alleged herein above, on or about February 3, 1997, Defendant filed with the USPTO a Revocation of Power of Attorney and Appointment of New Attorneys which had been prepared by Defendant for Dr. Katims' signature and executed by Dr. Katims.  The Revocation of Power of Attorney and Appointment of New Attorneys identified Defendant and certain of its attorneys as attorneys of record for Dr. Katim.

50.    As alleged herein above, on or about October 7, 1998, Defendant transmitted the '522 Patent to Dr. Katims with a cover letter that stated, among other things:  "[p]lease note that it will be necessary to pay maintenance fees periodically to maintain the patent in force for the full term" and "[w]e will remind you of these fees well in advance of the dates they are due."

51.    The Revocation of Power of Attorney and Appointment of New Attorneys and Defendant's statement "[w]e will remind you of these fees well in advance of the dates they are due" memorialize a contract between Defendant and Dr. Katims pursuant to which Defendant would, among other things, provide Dr. Katims with sufficient notice of the due dates on maintenance fees for the

'522 Patent to enable Dr. Katims to keep the '522 Patent in force for its full term.

52.    The contract described in the preceding paragraph was supported by consideration which included, among other things, the payment of Defendant's legal fees by Dr. Katims and the value received by Defendant in maintaining its attorney-client relationship with Dr. Katims in connection with, not only the '522 Patent, but other patent prosecution matters as well.

53.    Defendant was obligated to notify Dr. Katims of the need to pay the 2006 maintenance fee on the '522 Patent well in advance of the due date, as alleged herein above.

54.    Defendant did not notify Dr. Katims in 2005 or 2006 of the due date for the 2006 maintenance fee on the '522 Patent, thus breaching Defendant's contractual obligations to Dr. Katims, alleged in the preceding paragraphs.

55.    On information and belief, at some point prior to March 15, 2006, Defendant received from the USPTO a notification that a maintenance fee for the '522 Patent was required to be paid no later than September 15, 2006 to avoid expiration of the '522 Patent.

56.    Defendant was obligated to forward to Dr. Katims the USPTO notification of the 2006 maintenance fee coming due, as alleged herein above.

57.    Defendant did not forward to Dr. Katims the USPTO notification of the 2006 maintenance fee coming due, alleged in the preceding paragraphs.

58.    On information and belief, in or about October 2006, Defendant received from the USPTO a notification that the '522 Patent had expired for failure to pay the 2006 maintenance fee.

59.    Defendant was obligated to forward to Dr. Katims the USPTO notification that the '522 Patent had expired for failure to pay the 2006 maintenance fee, as alleged herein above.

60.     Defendant did not forward to Dr. Katims the USPTO notification of patent expiration alleged in the preceding paragraphs.

61.     The '522 Patent expired because the 2006 maintenance fee was not paid.

62.     The '522 Patent could not be reinstated through a petition showing that the delay in payment of the 2006 maintenance fee was *unintentional*, because Dr. Katims did not learn of the expiration of the '522 Patent until after the 24-month period for such petitions had passed.

63.     Dr. Katims and his licensee, Neurotron, were harmed as a result of the expiration of the '522 Patent.

64.     The harm done to Dr. Katims and Neurotron as a result of the expiration of the '522 Patent was proximately caused by Defendant's breach of contract.

65.     Defendant's conduct was reckless, willful, and wanton and meets the standard for punitive damages.

**VII.    COUNT THREE: EQUITABLE RELIEF BASED ON QUASI-CONTRACT**

66.     Each and every allegation of Paragraphs 1-33 is incorporated by reference as if fully restated herein.

67.     As alleged herein above, on or about October 7, 1998, Defendant transmitted the '522 Patent to Dr. Katims with a cover letter that stated, among other things: "[p]lease note that it will be necessary to pay maintenance fees periodically to maintain the patent in force for the full term" and "[w]e will remind you of these fees well in advance of the dates they are due."

68.     Dr. Katims reasonably relied on Defendant's statement "[w]e will remind you of these fees well in advance of the dates they are due" by, among other things, relying on Defendant to provide

Dr. Katims with sufficient notice of the due dates for maintenance fees on the '522 Patent to enable

Dr. Katims to keep the '522 Patent in force for its full term by paying the fees in a timely manner.

69.    Defendant did not notify Dr. Katims in 2005 or 2006 of the need to pay the 2006

maintenance fee on the '522 Patent.

70.    Under the circumstances alleged in this Complaint, it was inequitable for Defendant not

to provide Dr. Katims with such notice of the due date for the 2006 maintenance fee on the '522 Patent.

71.    On information and belief, at some point prior to March 15, 2006, Defendant received

from the USPTO a notification that maintenance fees for the '522 Patent were required to be paid no

later than September 15, 2006 to avoid expiration of the '522 Patent.

72.    Defendant did not forward to Dr. Katims the USPTO notification of the 2006

maintenance fee coming due, alleged in the preceding paragraph.

73.    Under the circumstances alleged in this Complaint, it was inequitable for Defendant not

to forward to Dr. Katims the USPTO notification of the 2006 maintenance fee coming due, alleged in the

preceding paragraphs.

74.    On information and belief, in or about October 2006, Defendant received from the

USPTO a notification that the '522 Patent had expired for failure to pay maintenance fees.

75.    Defendant did not forward to Dr. Katims the USPTO notification of patent expiration

alleged in the preceding paragraph.

76.    Under the circumstances alleged in this Complaint, it was inequitable for Defendant not

to forward to Dr. Katims the USPTO notification of patent expiration, alleged in the preceding

paragraphs.

-14-

77.   The '522 Patent expired because the 2006 maintenance fee was not paid.

78.   The '522 Patent could not be reinstated through a petition showing that the delay in paying the 2006 maintenance was *unintentional*, because Dr. Katims did not learn of the expiration of the '522 Patent until after the 24-month period for such petitions had passed.

79.   Dr. Katims and his licensee, Neurotron, were harmed as a result of the expiration of the '522 Patent.

80.   The harm done to Dr. Katims and Neurotron as a result of the expiration of the '522 Patent was proximately caused by Defendant's failure to provide Dr. Katims with the maintenance fee reminders Defendant said it would provide.

81.   Defendant's conduct was reckless, willful, and wanton and meets the standard for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, in view of the foregoing, Plaintiffs hereby pray for relief on all counts as follows:

a.   Compensatory damages for professional malpractice and breach of contract;

b.   Exemplary damages for professional malpractice and breach of contract;

c.   Monetary and other relief in equity based on quasi-contract; and

d.   Such other legal and equitable relief as this Court deems to be appropriate.

### JURY DEMAND

Plaintiffs respectfully demand a jury trial on all issues triable to a jury in this matter.

Date: September 14, 2009

Respectfully submitted,

/s/  Mary E. Goulet

_____

Mary E. Goulet (Bar No. 06817)
Whitham, Curtis, Christofferson & Cook, P.C.
11491 Sunset Hills Road, Suite 340
Reston, Virginia 20190
(703) 787-9400 (voice)
(703) 787-7557 (fax)
mary@wcc-ip.com

-16-